UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| WASHINGTON STATE INVESTMENT BOARD, | § § § | Civil Action No. 4:14-cv-00980 |
| | § | Hon. Keith P. Ellison |
| Plaintiff, | § § | |
| vs. | § § | |
| BP P.L.C., et al., | § § | |
| Defendants. | § § § | |

PLAINTIFF WASHINGTON STATE INVESTMENT BOARD'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINTS

1240399_1

Plaintiff Washington State Investment Board ("Plaintiff" or "WSIB") respectfully submits this response in opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Complaints (the "Motion").  For the reasons stated below, the Court should deny the Motion.

## I.  INTRODUCTION

Defendants' Motion is narrow.  Indeed, it seeks only to dismiss the holder claims brought under English Common Law pleaded in Plaintiff's Amended Complaint for Violations of the Federal Securities Law and for Common Law Deceit ("Complaint").  Motion, Appendix 1, at 2.[1]  Defendants contend that a plaintiff seeking to assert holder claims must "specifically identify what [they] would have done had the misrepresentation or omission not occurred" by alleging that they "would have sold the stock, how many shares [they] would have sold, and when the sale[s] would have taken place" in order to properly plead reliance under Fed. R. Civ. P. 9(b).  Motion at 15 (internal citations and quotations omitted).  Yet, courts have held that holder claims do not require the kind of heightened pleading requirements that Defendants espouse here.  Rather, holder claims need only meet the same pleading standard as for typical fraud claims involving the purchase or sale of securities.  Plaintiff's Complaint meets this standard.

Defendants also seek to dismiss a subset of Plaintiff's holder claims on the alternative basis that Plaintiff "could not have suffered any damages by holding BP shares in reliance on any post-explosion statements."  Motion at 21.  But Plaintiff was damaged, not just by the revelation of the true flow rate of the post-explosion spill, but also by Defendants' act of fraudulently concealing the true flow rate.  Accordingly, Plaintiff's holder claims should be upheld in their entirety.

---

[1]    Defendants' Motion targets the holder claims alleged in Plaintiff's Amended Complaint, filed on August 31, 2015.  Dkt. No. 36.  However, at the Court's direction, Plaintiff filed its current operative Second Amended Complaint (Dkt. No. 59) on December 16, 2016.  *See* 12/15/16 minute entry. Plaintiff's factual allegations did not change from the Amended Complaint to the Second Amended Complaint, and the parties' arguments on Defendants' Motion apply equally to both complaints.

## II.    FACTUAL BACKGROUND: PLAINTIFF'S HOLDER CLAIM ALLEGATIONS

Given the Court's familiarity with the securities fraud allegations brought against BP stemming from the *Deepwater Horizon* disaster, they need not be restated here.  Instead, a brief summary of Plaintiff's holder claims is provided below.

WSIB alleges, *inter alia*, that during the period of November 8, 2007 through June 25, 2010, it purchased BP ordinary shares and BP American Depositary Shares.  ¶1.[2]  Further, and "as a result of Defendants' ongoing and continuing misrepresentations [] Plaintiff continued to retain BP ordinary shares and suffered further losses, having been induced to do so by such ongoing and continuing misrepresentations."  ¶389.  Defendants knew and had reason to expect that "investors would rely on the price of BP securities as reflecting accurate information known to the company and its principals" and that "their misstatements and omissions would induce Plaintiff and/or its agents to purchase BP securities, as well as to continue to hold such securities even after the April 20, 2010 explosion onboard the *Deepwater Horizon*."  ¶399; *also* ¶¶396-398.

WSIB further alleges it "employed investment managers to manage its investment portfolio and make investment decisions on its behalf" and that certain of these investment managers "relied upon Defendants' false and/or misleading statements . . . in making the decision to purchase, hold, or transfer those BP Shares, and [WSIB] subsequently relied on its Investment Managers' independent, analytical research when purchasing BP Shares that were damaged by the alleged fraud."  ¶406; *see also* ¶405.  Certain of WSIB's investment managers, including Mondrian Investment Partners, Capital Group, and Pyramis Global Advisors Trust, "used an analytical, research-based approach to investment in order to decide whether WSIB should **hold**, purchase or transfer BP Shares" and "conducted extensive independent research and reviewed various industry, financial and marketing data, including BP's SEC filings and related publically available reports when making investment decisions."  ¶407 (emphasis added).  Some of these investment managers "met directly with BP management, including members of BP's investment relations department, and participated in BP-

---

[2]    "¶__" references are the Plaintiff's Second Amended Complaint (Dkt. No. 59).

hosted telephone conferences with securities analysts and investors.  In the process, the Investment Managers employed by Plaintiff relied on some or all of the false and/or misleading statements alleged herein when deciding that WSIB should purchase or transfer BP Shares."  *Id*.  The Complaint also makes clear that "[h]ad Plaintiff and/or its Investment Managers known the true state of BP's affairs, as misrepresented or omitted by Defendants' false and misleading statements, they would not have purchased and retained such securities."  ¶434; *see also* ¶433.

## III.   ARGUMENT

### A.   Plaintiff Has Satisfied The Pleading Requirements In Stating Its Holder Claims

Numerous courts have rejected the type of heightened pleading requirements for holder claims espoused by Defendants in this action.  For instance, in *Gutman v. Howard Sav. Bank*, 748 F. Supp. 254, 258-260 (D.N.J. 1990), the court rejected the requirement that plaintiffs need to allege what facts would have induced them to sell their stock and how many shares they would have sold. The court held that "Plaintiffs have done far more than allege[] 'fraud' against defendants; they identified specific misrepresentations in detail.  Plaintiffs' reliance – their non-sale of their Howard stock – follows from these alleged misrepresentations."  *Id*. at 259.

Similarly, the court in *Nairobi Holdings Ltd. v. Brown Brothers Harriman & Co.*, 02 Civ. 1230 (LMM), 2004 U.S. Dist. LEXIS 9100, at *15-*18 (S.D.N.Y. May 20, 2004), held that "plaintiff's fraudulent retention claim survives the liberal pleading standards of a motion to dismiss" where plaintiff pled "'in reliance upon the misrepresentations made by defendants, plaintiff purchased shares of WAXS stock on September 15, 2000 and thereafter, and retained shares acquired prior to September 15, 2000.'"  (Citation omitted).  The court decided that "plaintiff does not have to allege that it intended to sell its WAXS stock prior to September of 2000, as defendant contends."

In *Gordon v. Buntrock*, No. 99 CH 18278, 2004 WL 5565141, at p. 4 (Ill. Cir. Ct. July 19, 2004), the court rejected defendant's argument for a "higher level of pleading in a fraud claim which induces a person to refrain from selling securities," including defendants' insistence that a plaintiff must allege "a plan or intent to sell some or all of his . . . holdings" and an "objective manifestation

of that plan, as well as, the decision to forebear on the sale decision," as unwarranted.  *See also Reisman v. KPMG Peat Marwick LLP*, 787 N.E.2d 1060, 1067 (Mass. App. 2003) (plaintiffs making holder claims can "satisfy their burden by showing . . . that they were among those whom [the defendant] had reason to expect would rely upon its statements").

The above courts reasoned a plaintiff's theory of reliance can be addressed on the merits.  *See Nairobi Holdings*, 2004 U.S. Dist. LEXIS 9100, at *17-*18 ("[P]laintiff's fraudulent retention claim survives the liberal pleading standards of a motion to dismiss.  However, upon summary judgment or if this claim goes to trial, plaintiff will have to provide sufficient factual support that it did in fact rely on defendants' alleged misrepresentations in deciding whether or not to retain its WAXS stock . . . ."); *also Gutman*, 748 F. Supp. at 260 ("Defendants' procedural assault anticipates that plaintiffs will have problems proving damages if they cannot specify the number of shares they would have sold if defendants had or had not told them certain thing.  But the purpose of Rule 9(b) is only to put defendants on notice of the specific representations alleged against them, not to test the factual support for those allegations."); *Gordon*, 2004 WL 5565141, at p. 7 ("clear and convincing evidence is required to sustain the charge"); *Reisman*, 787 N.E. 2d at 1067 (reliance on written misrepresentations shown at summary judgment).  Thus, in order to plead reliance for a holder claim, a plaintiff need not allege that they would have sold the stock, how many shares would have been sold, and when the sales would have taken place.

Indeed, under the excessively strict standard Defendants offer here, holder claimants lulled into a false sense of security by a barrage of misrepresentations and omissions would never have the opportunity to make an informed choice to sell, let alone how much to sell or when to sell, and therefore be unable to plead fraud.  *See Gordon,* 2004 WL 5565141, at p. 8; *Gutman*, 748 F. Supp. at 267.  Such a restrictive pleading standard should not be followed.  Rather, the Court should apply the standard laid out in the *Gutman*, *Nairobi Holdings* and *Gordon* cases.

Further, WSIB's holder allegations meet the same stringent standard applicable to pleading fraud claims for the purchase of securities pursuant to the federal securities laws.  The Court has upheld fraud claims for purchases substantially similar to those alleged by WSIB in its prior orders,

*see, e.g.*, Amended Memorandum and Order in *Alameda County Employees' Retirement Association, et al., v. BP p.l.c., et al.*, No. 4:12-cv-1256 (cons.) (S.D. Tex. Dec. 5, 2013) (MDL 2185, Dkt. No. 706), and Defendants do not challenge the sufficiency of such allegations in their Motion.  *See* Motion at 3 ("The complaints challenge many of the same statements this Court previously addressed in its prior decisions in this MDL predicated on the same factual allegations.  This motion does not challenge any of those prior rulings.").  Reasonably, each purchase of BP shares during the period of November 8, 2007 through June 25, 2010 (¶1) also represents an instance where Plaintiff decided to continue to hold (and increase) its position in BP shares in reliance on Defendants' alleged misrepresentations and omissions.  *See*, *e.g.*, ¶¶389, 399, 407.  Accordingly, like its claims for the purchase of BP securities, Plaintiff's holder claims satisfy the pleading requirements for reliance under Rule 9(b) and the Court should uphold them.

The cases cited by Defendants suggesting a heightened pleading standard for holder claims are not persuasive as they were decided under Florida and California State law and constitute non-binding precedent.  *See In re Bank of Am. Corp. Secs. Deriv. & Employee Ret. Income Sec. Act. Litig.*, No. 09 MD 2058, 12 Civ 5210 (PKC), 2013 WL 6504801 (S.D.N.Y. Dec. 11, 2013), *Anderson v. Aon Corp.*, No. 06 C 06241, 2011 WL 4565758 (N.D. Ill. Sept. 29, 2011), and *Pafumi v. Davidson*, No. 05-61679-CIV-COHN/SNOW, 2007 WL 1729969 (S.D. Fla. Jun. 14, 2007).

### B.   Plaintiff Has Adequately Pleaded Damages For Its Post-Explosion Holder Claims

Defendants next contend that WSIB cannot plead recoverable damages for ordinary shares held in reliance on post-explosion statements because, "had BP disclosed the 'true' flow rate after it discovered the spill, BP's stock price would have declined immediately to the price the shares eventually reached on June 25, 2010 (when Plaintiffs say the full truth about flow rate was known to the market)."  Motion at 20-21.

However, Defendants' argument ignores that the delayed disclosures in this case resulting from the intentional concealment of unfavorable flow rate information affected the market price of BP securities in more ways than had the true flow rate information simply been revealed at the appropriate time.  As Justice Kennard stated in her concurring opinion in *Small v. Fritz Cos., Inc.*, 30

Cal. 4th 167, 190, 65 P.3d 1255, 1269, 132 Cal. Rptr. 2d 490, 508 (2003): "There is no logical reason under the efficient capital market hypothesis to assume that investors would disregard information showing . . . [the] concealment of true data and would value the stock as if no such thing[] had occurred."

> Indeed, Justice Kenndard went on to explain this basic principle:

> > ***Investors will not only question management's competence but also its integrity***. Investors would have reason to wonder whether there were other, yet undisclosed instances of fraud, and to doubt whether management really recognized its duty to protect the interests of stockholders. Investors would be concerned, too, that lenders would doubt the integrity of the management and question their financial data, affecting the company's credit status. They would fear that the company might incur the disruption and expense of defending numerous lawsuits . . . . ***In sum, revelations of . . . management misrepresentations raise a host of concerns that may lead to a decline in stock values beyond that warranted by the . . . information itself***.

65 P.3d at 1270 (emphasis added). The cases cited by Defendants, *Crocker v. Federal Deposit Ins. Corp.*, 826 F.2d 347 (5th Cir. 1987) and *Arent v. Distribution Sciences, Inc.*, 975 F.2d 1370 (8th Cir. 1992), on the other hand, stand for the proposition that plaintiffs are not injured when they lose an opportunity to profit from a defendants' fraudulent scheme. Those cases do not account for damages or injury potentially caused by a company making and concealing fraudulent misrepresentations and omissions – as is the case here – and, they were decided under Mississippi and Minnesota State law.

> While separating the loss in value attributable to the fraud from that loss attributable to the disclosure of truthful but unfavorable flow rate information may require expert opinion, such proof is commonplace in securities fraud actions and should not prevent Plaintiff from stating a claim. Further, just because this proof will likely require expert opinion, it does not require dismissal at this stage in the proceedings. As alleged in the Complaint, WSIB is also "entitled to recover lost profits on foregone opportunities flowing from Defendants' wrongful conduct as alleged herein, necessary to put Plaintiff as nearly as possible in the position Plaintiff would have been if Defendants' such wrongful conduct had not occurred." ¶392. Therefore, the Court should uphold WSIB's holder claims based on Defendants' post-explosion statements.

## IV.    CONCLUSION

Based on the foregoing, Defendants' motion to dismiss WSIB's holder claims should be denied in its entirety.

DATED:  March 9, 2017            Respectfully submitted,

EDISON, McDOWELL & HETHERINGTON LLP


s/ ANDREW M. EDISON
ANDREW M. EDISON
Attorney-in-Charge
Southern District Bar No. 18207
1001 Fannin Street, Suite 2700
Houston, TX  77002
Telephone:  713/337-5580
713/337-8850 (fax)
andrew.edison@emhllp.com

Attorneys for Plaintiff

DATED:  March 9, 2017            ROBBINS GELLER RUDMAN
  & DOWD LLP
TRIG R. SMITH
KEVIN A. LAVELLE


s/ TRIG R. SMITH
TRIG R. SMITH

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
TrigS@rgrdlaw.com

Of Counsel Attorneys for Plaintiff

1240399_1

CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of March, 2017, a true and correct copy of the foregoing document was filed using the Court's electronic filing system.  Notice of this filing will be sent by the Court's electronic case filing system to all counsel of record registered to receive service as required under applicable local rules.  Parties may access this filing through the Court's electronic filing system.

s/ TRIG R. SMITH
TRIG R. SMITH

1240399_1